All right, we'll hear from Mr. Shelton first Thank you, I don't know please coordinates Martin Shelton from Lewis Brisbois speaking for the appellants here this case arises from the historic and ongoing contamination of the Defendant plaintiff's property from the defendants joining gas station now the contamination consists of non-petroleum hazardous constituents mixed with hazardous constituents You don't want the supplemental authority or the corrected brief Well, I can look like it was more than a corrected brief. That's sort of an unusual procedure. We were curious as to why The the the correction was because the in the citation of the statute for petroleum exclusion it referenced the wrong subset In three different places according to the the rules we were required to submit the entire brief over again the errata sheet Lists exactly what was changed. It's it's it's a rip the citation to ninety six 0114 B was incorrectly listed as 14 C in three different places. So we felt it was appropriate to get it, correct That's why we filed it your honor I understand your statement, but it's you've kind of driven the clerk's office nuts over the last few days and that's I'm not sure what was in that brief that you couldn't have put in there to start with Well, we we noticed a mistake in preparing for the arguments that the citation was cited wrong. That's why we corrected it That that's all that is Okay So in the The underlying environmental issues in this case are a little bit complex, but the issues on appeal route are simple This court must reverse because the district court failed to appropriately apply the rule 56 summary judgment standard it failed to it overlooked evidence the record and failed to View the evidence and give all inferences to the to the plaintiff as required as a non-moving party now circle it encourages private individuals to clean up property by allowing them to seek the cost of those response from the responsible parties and once they Established that there is there is contamination on the defendant's property, which is or could become Located on on their property. Then the burden then shifts to the defendant in that case and the plaintiff having met the burden under section under circle 107 a They have then had the burden to either disprove causation or to prove the petroleum exclusion Madison University Mall versus Chapel Hill tire, which is also the middle district, North Carolina Succinctly stated that the petroleum Exclusion only applies to unadulterated petroleum products more of the defendant has to burden approve the petroleum exception Now here the district court found that the plaintiffs met their burden under 107 a and it but for their the court's incorrect Application the petroleum exclusion they would prevailed on circle now. What is the petroleum exclusion then the definition of petroleum which is in 9601 14 there is a statement that says that petroleum products are not to be considered hazardous substances But it comes with a significant exception, which is in which is in 9601 14 B. This is one we we Stated wrong in the original brief is 14 C But in 14 B it refers to a list of hazardous substances by way of 9602 That's found in 40 CFR 3024 for Which is a list of hazardous individual had individual constituents Which are considered hazardous substances and are subject to circle a circle The petroleum exclusion was meant to cover The the tanker truck that spills over at the highway flips over and spills say 10,000 gallons of gasoline into the farmers pasture what it doesn't apply to is these individual constituents that have become separated from the petroleum product or when it becomes mixed with other Substances which are not part of petroleum Now the district court made two errors in applying the petroleum exclusion here first It focused on the presence or absence of chromium Which is a non a non petroleum hazardous substance and ignored evidence of these otherwise circle regulated hazardous constituents now the court recognized that chromium was dispositive of The applicability of the petroleum exclusion noting and I quote had mr. DeHaven discussed chromium in his earlier report There would have been no problem What I was before in case in chief of chromium I'm asking you is Your observation, what's the evidence the defendants put forward to meet their burden? Well, I would seem to me to be the crux of your case Well, what well your honor, we don't we don't believe that the defendants put forward any evidence to meet their burden now as for the plaintiffs the the Plaintiffs expert reports did actually discuss the presence of chromium in an August 2024 report Which is time you follow within the court's deadlines Well, I represent the plaintiff your honor, right so what the evidence that we put on was if you put if you proved your Initial prima facie case there was a release and all that sort of stuff. Correct and the burden shifts to the defendant Right, that's correct in order to prove the absence of causation So my point is if the defendant failed to prove the absence of causation That that that ends it at this stage, right? That's correct, your honor Let me ask you a question. I'm just curious about when your expert filed his initial report Why didn't you include the results of the test that had already been run? For the presence of contaminants on the defendants property Well when we filed the we filed the initial report He referenced the the results of the various constituents that were that were at issue here. So chromium nothing In his initial report. He in his initial chromium had been found He did it was not analyzed for not tested for but found yes, he in and So in in the record so in the record in at JA 476 and his will 26 report Which is the August 2024 will 26 report. He he stated that as he as he noted So it is the in the declaration that was submitted. He was referring back to his August 2024 report He was saying that there were concentrations of controlling what concentrations of chromium which is a non-patrolling constituent Existing in the soil and groundwater and plaintiff and defendants property and after reviewing that data he found specifically that they were Referring back to an older part of 476. Are you reading from? I'm sorry I did as I understood it you said you were reading from page 476 Yeah, I have it down as joint appendix 476, which is the beginning of his will. So we're on that page Are you reading from? I Don't have the exact part of the page. I've got it like a quote in front. I'm sorry. It's okay But if I can but if I can be clear about that when he when he did his his his August 2024 report He was looking at all the past reports that had happened so far Okay So there were a series reports that happened on the defendants property including a 2006 assessment which found chromium in the soil Which is a source area for the defendants defendants property. He was also looking at a 2022 Phase 1 and phase 2 to happen on the plaintiff's property in which soil and groundwater tests were happening they also found chromium present and so in the The 2001 and 2022 phase 1 and phase 2 were attached in the record And in both of both of his reports were attached in the record as well and it isn't The the tooth out the 2006 defendants report wasn't actually he did wasn't attached in the record of the one that he referred to in his Report, but that's not actually required in the in the supplemental briefing that we filed recently It was a case. There's a case in the fourth circuit imminent medical supplies versus Pleasant Hill Valley Hospital Which they noted that rule 50 succeed does not mandate the exclusion of an affidavit for lack of underlying data Supporting the assertion of facts and goes on to say that if an affidavit states facts in which the expert basis is opinion That satisfies the rule 50 60 even though the expert doesn't attach that particular report So so that the older report is is not attached. The new reports were included in the record He didn't attach them to his actual to his actual report and part of the reason for that your honor is is that these reports that we're talking about or like The phase ones like this big and the phase two is like this big So it in terms of producing his actual expert report return tend not to include those baseline documents. Just discuss what the information is in it I Just couldn't find it Now And as and as I was as I was saying that that the Mr. Haven did actually reference chromium in both his Both his is a expert reports that were before the court as well as talk about in his deck in this declaration in in section 3.2 of his report he discusses the presence of chromium on the defendants property and the report I was just talking about in section 3.3 of his report Which gets into I think that's J 476 377 he talks about this these assessments on the plaintiff's property Now the court acknowledged that they even testified in this declaration. They quote that chromium was present on defendants property But then refused to consider that the declaration on the grounds that it was untimely in the factual Evanson supporters opinion And we'll come back to that in just a second now this court also air by not looking at other hazardous constituents which were present in the circle defines hazardous constituents by looking at sort of a cross-referencing the Chromium to prevail and at this stage. I mean this waste oil and Tank sludge and kerosene as long as that's in the record as being Present on the property is that enough it is enough your honor because if you look at the cases that we cited on pages 25 to 36 for a brief when when these Constituents are separated from the petroleum product or if they are found in concentrations beyond those inherent petroleum The petroleum exclusion doesn't apply and so that at that point The plaintiff should prevail it as it results to circle and what it gets down to is that the the statutory language in 9601 14 that does exclude petroleum products But doesn't it doesn't exclude these individual substances once they become separated from the actual product itself now with with respect to The state law claims the district career district court here also aired granting summary judgment finding that there was there was no causation and the finding was is that the court felt that the evidence presented only showed that the Defendant's property was a potential possible or maybe probable plausible source of contamination and that that no jury could decide that it was more likely was the source of Contamination and doing that the district court inserted itself in front of front of the jury on a factual Determination that should be left to them Now the district court here again acknowledged that it was the most likely source of contamination as he stated in his reports All of which was in the record But then rejected it because she didn't believe that he stated what reports he was talking about where in those reports There was the factual influence or and that it was untimely Again, all of this is incorrect In in this declaration on page 6 Mr. Daven identifies the two reports that I've talked about already which that he relied on his August and October 2024 expert reports both of which were submitted into the record within the deadlines Now both those reports were also submitted by the defendants and into the record as well in summary judgment now Mr. Daven's August 2024 report discusses the releases on defendants property and and as being the most likely sources of contamination on plaintiff's property and in and while his declaration goes into More explanation to try to make it clear. It doesn't provide any new opinions in fact, he specifically says that everything I'm saying here is you know is My is based on my opinions that are in my reports And so what the what the court failed to failed to really kind of look at consider was is that in the August 2024 report? Mr. De Haven recognized there are only two possible sources to recognize environmental conditions for the issues that are existing on the plaintiff's property and in which was in J 471 through 472 and then he goes on in 472 to Eliminate plaintiff's property as a source that contamination part of the reason for that is is that the Contamination on plaintiff's properties in two places. It's a very shallow soil at the top Which is where there was some use of the property for auto repair and if there's the soil contamination, it's very shallow Okay And then deeper down in the groundwater contamination is groundwater contamination that we're dealing with in this case and it's significantly higher and the reason why you he doesn't he Concludes that they these two things are not related is because if if the groundwater contamination Down here was being caused by what was happening up here You would expect to see significantly higher contamination the soil and you see it throughout the soil column down to the down to the groundwater Now that's as opposed to to looking at the the results that's on the defendant's property where you have significant amounts of groundwater contamination and soil contamination historically and Also within the phase one report, which was noted into the record And Discussed in his discussed in his August 2024 report. They looked at all the other potential Sources that surround it and by look in what they could not identify any other Possible source that was up gradient that would be causing this contamination that's based on the location of properties But also on other samples that were taken on plaintiff's property sort of surrounding where this bloom is there where everything is clean So if it was coming from somewhere else, you'd expect to see it in those in those other wells as well It was it's where we find it is where it's directly across from the defendants property so at the summary judgment stage the plaintiff isn't required to prove causation with absolute certainty the proof that we're necessary that's necessary for us to show is something to suggest a a Probability and not a mere possibility and I believe if all the evidence is looked at on the de novo standard review here Including the experts reports in this declaration to find that the causation standard here has been satisfied Thank you, all right, thank you very much. You've got some rebuttal time left. We'll now hear from mr. Young Thank you, good morning your honors may it please the court my name is Robert Young and I represent the defendants of BFJ and its members BFJ owns a Property that leases a gas station to an operating Sunco Gas station. So the three issues here today That we believe that this court should affirm the district courts decision number one because the circle of petroleum exception does apply to these petroleum Constituents and I'll get into these export Reports in a minute and this what I believe is a red herring this chromium issue We can look at the specific language in the report To the petroleum exception applies the District Court did not err and did not abuse its discretion in disallowing and excluding an expert Declaration from mr. Dehaven that included new opinions Including this alleged presence of chromium on the defendants property. Why is that an opinion not a fact? Because there's nothing in the record your honor that says chromium was found on the defendant entirely separate objection It's not in the record, but if it were in the record, why is it? Why is saying it's there it was found there an opinion Well, he says it was found there But the opinion would be if it was found there then it must have adulterated the the petroleum Which would exclude it from the petroleum exception the petroleum exception only applies to unadulterated Petroleum right petroleum gas that leaks from their typical UST gas or diesel fuel tank, which is what we're saying as a conclusion from the From what? Well, and I think the issue with what judge Eagles raised in the in the district court was because now the expert has now said Oh, by the way, you have chromium on your property, which seems to now imply that it's somehow Adulterated gasoline that was a new opinion that leads to this new argument This was completely new the X even the de Haven expert the opposing Parties expert has admitted this entire time before that affidavit that this was a release of petroleum Constituent so you would disagree with your colleague who says chromium was mentioned in the initial report from their expert No, it was mentioned but Finding that there was chromium not testing or analysis or whatever You would disagree that that's in the record, correct, right?  And in fact, we'll look at the record But what the report says is that they tested for chromium and then the very next sentence says that they only identified one other substance Not chromium that was above the minimum. Okay, no mention of the actual presence of chromium. Don't let me distract you too much Heating oil and waste oil I don't believe that's before the court with respect to heating oil and waste oil There's no heating oil or waste oil on this property. That's what what excuse me that I didn't mean to interrupt But that what the was recited in the plaintiff's experts initial Opinion that there had been waste oil found on the property. No, no, your honor. That's not what it says And in fact, I have the report and you can see and actually the first report in the rebuttal port Mr. De Haven Continually refers to the petroleum constituents. I know what I'm looking at page 470 Of the plaintiff's initial report. He said in number one UST which is underground storage tank number one for 550 UST is containing kerosene waste oil and heating oil And where you know page 470. Oh, oh, yes, you see number one. Yes, your honor Okay, I got you. Those were tanks that were originally removed They were back from 1996 they actually heated the the property originally they'd been out of use for some 20 years They hadn't been used in 20 years and those were removed from the property But didn't he recite that there'd been a release to the soil from? Those tanks and I look again, I'm looking at the bottom paragraph on that page second the first sentence It starts off during the closure in place of UST group number one 1996 evidence of a release to soil was identified there Yes, sir, I'm sorry, isn't that is it talking about something different and my misreading that no that that was the there was a Release noted they did not test the groundwater But I don't believe there's any can been any connection to any waste oil or kerosene That's traveled or more connection Does it have to be that it would even be located on the plaintiff's property have to prove that? Actually for circular purposes. They just have to prove that it could be That it could have my range different in the state law claims where you have to have that higher standard of causation You know, that's not the possible or the might be But no for circular. No, it doesn't actually And recognizing the kind of odd burden of proof in these types of cases What's your evidence that that wasn't on? The plaintiff's property. It was your burden to show there's no causation Well with respect to the circular claim your honor I don't believe our issue is with with respect to proving causation our because the judge eagles rule had to prove the absence of No, your honor Judge eagles ruled that there was a genuine issue material fact as to the release and in any cause that migrated over to the Plaintiff's property what what we're talking about is the whether the petroleum exception applies and what the court say on that if there's a release and under this Changed standard for the circle of claims if they show there's a release That there's something on their property and the burden changes So that they don't have to show causation you have to show the absence of causation So what I'm asking is what evidence did you put on to show the absence of causation? What with the we do have evidence of that with our expert? Mr. Cornett who provided evidence that the groundwater flow actually goes away from that property But I believe what the burden shifting issue is I thought in the final report from the ex from the defendant's  They said that there was a likelihood that that had migrated on to their property. They did your honor But but again tell me so it was your burden to negate that Right so that you couldn't go any farther in the proceeding What well I don't think so at this stage or I think these are two separate issues I think there was a cause there's causation as to whether there's a circle of violation, right? That's just a release and and was it found on your property? That's a whole separate circle of issue the issue before us is whether the petroleum exception applies And it is our initial burden to prove that what the release was was petroleum if we prove that that release was Petroleum that burden then shifts to the plaintiff to show that that release Because when so when we bought this property it was excavated and a site assessment was done and DNR the North Carolina Environmental Agency Did an inspection and what they did is they found and they found residual petroleum so what was filed and what is on record within the real estate records in Guilford County is a Notice of residual patrolling judge Traxler is reading that there was waste oil and heating oil and those are not part of the patrolling Well, I do believe there is a case that we've said in our brief that chartreuse case It says kerosene actually is part of the petroleum exception. It's a petroleum constituent waste oil You've got heating oil and there are a lot of cases that say that's not part of the petroleum exclusion What's my understanding that I haven't seen any? Allegation that this waste oil was the the adulterated or that was That didn't apply the petroleum exception what they were arguing Let me ask you a question. I'm gonna read you from a case Okay Says the petroleum exception only applies to unadulterated petroleum products used motor oil almost certainly is hazardous waste Under circular, you know who said that judge Eagles? So why the answer follow up on judge 80s question why in motor oil Will judge Eagles addressed it in her opinion doubt not a legitimate substance covered by the petroleum exclusion Well, it would be if that had been an opinion of their of the expert or it said that that that release Then migrated to their property So you think he has to prove the rule it he has to prove migration of the motor oil that it could have but that's not Allegation in this case that it was the motor or the motor oil and judge Eagles points it out in the opinion that was something that was closed 30 years ago and And when Diener came back after that 30 years after we brought the bought the property and did a new assessment There was no mention of waste oil. The only mention was is it was positive for benzene? Above the limit. That was the only thing that was above the limit and that is a constituent of petroleum and There's no evidence that though that So the waste oil was never an issue that was brought up for the summary judgment. The issue was whether Whatever leaked or released on allegedly released on our property was petroleum or not And the only evidence is that it was petroleum it leaks from gas tanks. They were What's what's your record site that that's only petroleum When the when the site was excavated D Diener Wrote a letter that said this was a release of petroleum We had to file on record a notice of residual petroleum when we got the expert report from mr. De Haven it constantly characterizes this alleged release as a release of petroleum constituents Repeatedly in the report we had no evidence This report was as I understand it was for a vapor intrusion system And it was not to be a at that point not to be a comprehensive analysis Pollutants on the plaintiff's property Well, I believe the report contains Several sections and one of them is the nest the necessity of the the vapor barrier, but it also talks about what was on the property the purpose of the test Talks about the petroleum constituents and in fact in the rebuttal report the expert goes on to say and make a point that the water flow and the way that this moved is consistent with how Gasoline constituents would move in ground flow. So the prevailing idea was this is these are but this was a petroleum release These are petroleum Constituents there was the notice of residual petroleum filed. That's what nor that's what Diener found Was that it was a petroleum release, but then all of a sudden we get this affidavit With this new opinion that was after the discovery period that said, oh, by the way, there's chromium on the property Well, what does that do if that's true? It arguably could create a genuine issue of material fact as to whether that chromium Adulterated the petroleum, but that's not what the report says. That's not what's in the report This was there is no evidence that this petroleum the gas tanks Any release was unadulterated Sorry, you know when I when I go back and read the North Carolina report about this tank and what was there? And I'm referring to UST incident number 16 347 And I don't expect to have that but it It mentioned the presence of chromium. Mm-hmm. So I mean they chromium had been found on your property in which report You're on it. This is UST incident report number 16 347 Well, I mentioned with regard to the waste oil or whatever, okay well, I've looked through those reports and opposing counsel cited to page 4 75 in the record to stand to stand for the proposition that there was chromium found on our on the Defendants property. I didn't write down It's a 475. I thought he gave me another number 476 I have written down 475 and okay He said 476, but if you go to the page before I've done a word search on both of these reports and this is when it mentions chromium it says the soil samplers were analyzed for VOC's and Identify some and and then goes on to say and lead and chromium and that says the sole The sole VOC identified above the limits was MTBE, which is a gasoline constituent just say analyzed But if you go And this is not in the record, but if you go to the actual report of the North Carolina Department of Environmental Safety or whatever it's called. Then you when you read that report it says there was chromium found On your client's property. Well, I haven't seen that in the record and even if it were it's referenced. I think in his report In plaintiff's experts report and I'm looking at page 470 You look at 470 go down to the last paragraph Mm-hmm says during the closure in place of UST group number one in 1996 evidence of release to soil was identified UST incident number 16347 so I go and look that up and it says that report North Carolina records Which is a public record. It says chromium was found Well, it was not identified well that was back in the 1996 closure and it wasn't identified in the in the disclosures I'm sorry in the in the new Site excavations in 06 and 09 that were done after and while our clients were buying the property but and even if there were your honor, even if there were chromium there still has to be evidence that this chromium which Does occur naturally in the soil and can be part of petroleum It still has to be some evidence that somehow this really is a constituent element of petroleum chromium is Well, I think it does occur naturally. I think well Even if the case may be there's has to be some evidence that that chromium Was adulterated or adulterated or somehow mixed with the gasoline But don't you have to prove it didn't get to the plaintiff's property. I Don't I just have to prove that what was released was petroleum for the petroleum exception to apply We're not arguing that there's a causation issue with circle What we're arguing is that the petroleum exception because what was allegedly released on our property was petroleum That is it's not an issue. It's not an issue of causation Not we plaintiff has to accept has to Prove that chromium wasn't released by you that it occurred naturally or Well, if we prove that what the release was the alleged release was petroleum Then they have the burden to prove that it either wasn't petroleum or it was adulterated with some other Additive something that made it that took it outside of the petroleum except they just well that chromium is a natural constituent of That chromium is a constituent of petroleum. Well, it may not be I mean I did look at I did look it up but again that wasn't the the issue that was the that was that issue at this summary judgment because this It's never been shown that chromium in any form was added to the gasoline or the petroleum That was in these gas tanks and I and I think we're confusing the issues of causation with whether the petroleum exception Applies and it's my understanding that if we show which judge Eagles Held that correctly held that we did that if we show that whatever the release was was petroleum or petroleum constituents ie benzene MTBE then the burden then shifts to the defendant to prove that it wasn't petroleum proof of that was what? The the initial Diener Site investigation and reports that called it a petroleum release then and and made our clients I believe it defines it as a petroleum release and the the one His parlance would that include the waste oil at the bottom of the tank? At that time there was no mention of the waste oil that was a separate tank your honor the waste oil had nothing to do With the gas and diesel UST's that was an old heating fuel tank that had been unused for 30 years So, how do we know that when he uses the term petroleum that doesn't include those substances? Well, it hasn't been identified as such your honor in any of the petroleum release that property was tested extensively in 2006 and 2009 and all that is in the record and there's no mention of chromium All right. I understand that but when you're talking about petroleum if there are If there's tank waste Waste oil that's not included in the petroleum exclusion. It may be part of the tank it may have gone in as petroleum, but then it's it's not part of the exclusion so where's your evidence that says none of that ever got to the plaintiff's property Well, we don't know whether it was on our property so we don't know whether it could have gone from our property to his And I don't know that there is a test that says there's there's chromium on on their property It may be because he referenced about the chromium from yeah Let's just stick with the waste oil and the bottom of the tank and that sort of stuff. So Under this scheme as I understand it. You're the one who has to prove there's no causation That didn't get over there So what I'm asking you is where what was your evidence in the trial court that that did not occur? That this was just a petroleum release there was no evidence of anything else that was released with the petroleum all of the two every test from 2006 on with respect to the you're saying that there would have there that there's a Technical statement of art in this field that if it were the waste oil or the heating oil That that was required to be separately stated No, I just didn't see it is disclosed in any of the I mean that those are from the night Let's see. That's part of the problem. We're having Using this broad term petroleum which could include all those things but in terms of the term of art petroleum exclusion that's different from the Bigger set of petroleum which could very well include Heating oil waste oil kerosene in its natural state, which are not part of the petroleum exclusion Well, yes if they have a daughter if any of those outside substances have adulterated the petroleum But again, we had no evidence that the petroleum at issue here had been adulterated All right, all right, thank you very much we appreciate your argument and now we've got some rebuttal argument for mr. Shelton Well, let's start with I would I would observe the opposing council kind of turns the burden of proof on the head a little bit There where he says you can't just say gasoline then meet the burden of proof as to whether or not The unadulterated petroleum exists in order to get the the petroleum exclusion He needs to actually demonstrate that that what we found on our property or what is in hit in his ground is unadulterated Petroleum meaning gasoline on the technical term Which if you it's clear that your honors have read the reports the technical term for that is El Napo Which is a non aqueous phase liquid meaning gasoline So unless unless somebody has found that's present then there's not Petroleum in the sense that he's using it. What we're complaining about our constituents when you go to test for test for Anything like this. I mean there is a list of about 20 different constituents long for volatile organic compounds There's a list even longer for semi volatile organic compounds, which is basically diesel fuel And then there's another list of nine different things which are heavy metals, which are not volatile or semi volatile organic compounds and they're not Petroleum constituents when you when you go to refine crude oil into all the different products that result which is gasoline or diesel fuel We say it does not apply your honor Because Well, if the petroleum exclusion does not does not apply then you should reverse the district courts opinion And then we will be able to move forward with our circle claim because our claim was to recover the costs that we incurred to investigate and remediate as a result of the Hazardous constituents that have moved from the defendants property on to my clients property Well the the summary judgment granted to be FJ should be reversed your honor Yes, your honor Because the petroleum exclusion doesn't apply here because because what we have are individual hazardous constituents Which are not subject to the petroleum exclusion and because we have hazardous constituents, which are not Not considered to be petroleum. That's the heavy metal chromium. There's methylene chloride, which is also not petroleum MTBE which is lumped together with petroleum is actually made from natural gas It's not really petroleum Although the only way it gets into the environment is because I used to put it in gasoline But it separates it separates from it and when it separates it leaves the exclusion It's migrating in the groundwater your honor, so it's migrating from the ground water from the from the defendants property over onto the plaintiff's property I'm sorry Yes, your honor the 2002 phase 2 report, which is in the record at I have the site for that His his his expert reports say it and he's referring to this 2002 Phase 2 phase 2 report which has all of the testing results in it And what and what and what that finds is is a series of hazardous constituents Some that are not petroleum, which is chromium methylene chloride and then some that are You know may have been a part of a petroleum product at one point, which is benzene toluene ethyl benzene But they've become separated and they've traveled on their own along with this MTBE stuff Which is has a much longer name Waste oil tank waste Heating oil Kerosene That got to the plaintiff's property Well, it's it's the evidence of the constituents that we found your honor and and the one thing about it Is so the chromium is a heavy metal I mean, it's not a petroleum constituent, but you you would be more likely to find it in say like waste all Because it the chromium is something that has leached off and it's gotten mixed up with it That's why that's why waste oil is not considered subject to the petroleum exclusion because it's already adulterated For some reason we didn't accept the chromium evidence Specifically on waste oil Tell us why tell us what the evidence is Well, we okay so so Within the sampling results that are discussed in his August 20 August 2024 report, which again refers to this 2022 investigation Mr. Havens report. Yes And the 2022 investigation was actually done by somebody else. He's just referring to it Within that there are samples that show the presence and of Chromium on the plaintiff's property. Okay, and that that ties back to What he talks about in his declaration where he's referring to an earlier Investigation on the defendant's property in which they found total chromium concentrations ranging from 57 to 69 milligrams per kilogram One was You say that should be reversed and you should you say that The your circuit claim Well, so the motion to compel was related to the fact that within the discovery period we asked you made a request for entry to take some additional samples and this was to to get Newer data and it was actually most relevant to a Rickler claim, which is not before the court But we were going we were going to get newer data from the defendant's property to match up with the newer data on the plaintiff's property Well, it it matters in the sense that we were denied the ability to get information that would have also been relevant here And that the court made a mistake when they did it because we properly made the the request The reason we weren't able to go on is because they told us no and the court when the court got around to deciding it The discovery period was over and then she chided us for not doing it during discovery period But we had done it properly to begin with and we should have been able to go do the testing Thank you very much, we'll come down and greet counsel and then move on to our last case
judges: G. Steven Agee, William B. Traxler Jr., Henry F. Floyd